UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNDELL HENDERSON,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>W. L. MUNIZ, et al.,<br><br>　　　　　Defendants. | Case No. 14-cv-01857-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' SUMMARY JUDGMENT MOTION; SETTING BRIEFING SCHEDULE**<br><br>Re: Dkt. No. 42 |

Plaintiff, a Muslim prisoner at Salinas Valley State Prison ("SVSP"), has filed a pro se complaint under 42 U.S.C. § 1983 alleging that SVSP prison officials have violated his First Amendment right to free exercise of religion, his Fourteenth Amendment equal protection rights, and his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1. Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages.

The Court granted Defendants' request to file multiple dispositive motions, allowing Defendants to first file a summary judgment motion raising exhaustion and other procedurally-based defenses. Docket No. 41. Now pending before the Court is Defendants' summary judgment motion alleging failure to exhaust administrative remedies, Eleventh Amendment immunity, and entitlement to judgment as a matter of law. Docket No. 42. Plaintiff has filed an opposition, Docket No. 63, and Defendants have filed a reply, Docket No. 69. For the reasons set forth below, the motion for summary judgment is GRANTED IN PART AND DENIED IN PART.

//

//

# BACKGROUND

The following facts are undisputed unless otherwise indicated.

## A. Religious Accommodations at Salinas Valley State Prison

Plaintiff is a practicing Muslim. Ellis Decl., Ex. R ("Henderson Dep.") 25:20-21. When Plaintiff arrived at SVSP's Facility B on August 11, 2010, Chaplain Landou served as the Muslim chaplain. Hernandez Decl. ¶¶ 4, 11 and Ex. A; Henderson Dep. 69:1-70:7. During normal programming, Facility B receives Jumu'ah services — Islamic Friday prayer service — in the chapel on the first, third, and fifth Friday of each month. Hernandez Decl. ¶ 8. From August 2010 to July 2011, a prison-wide staff shortage required Chaplain Landou to conduct Facility B's Jumu'ah services on Wednesdays and Thursdays. Hernandez Decl. ¶ 9. In July 2011, Facility B's Jumu'ah services were moved back to Fridays. Hernandez Decl. ¶ 10.

In April 2012, Chaplain Landou transferred to another institution. Hernandez Decl. ¶ 11. After Chaplain Landou's transfer, there was no Muslim chaplain or certified volunteer to supervise Facility B inmates while they congregated in the chapel. Hernandez Decl. ¶ 11. Because inmates cannot congregate in the chapel without a chaplain or volunteer to supervise their conduct, Muslim inmates were not allowed to congregate in the chapel for prayer. Hernandez Decl. ¶ 12. From August 28, 2012 through January 2, 2013, black inmates in Facility B were placed on a modified program,[1] which resulted in the cancellation of all out-of-cell religious programming for black inmates. Hernandez Decl. ¶ 14.

On November 26, 2012, Hernandez joined SVSP as its community resources manager ("CRM"). Hernandez Decl. ¶ 2. On January 3, 2013, CRM Hernandez arranged for Herrera, the Native American spiritual leader at the time, and Chaplain T. Aquil, the Muslim chaplain at Correctional Training Facility, to supervise Jumu'ah services on an ad-hoc basis. Hernandez Decl. ¶ 15.

---

[1] A modified program is a significant interruption to normal prison programming based on the discovery of serious threats to institutional security, or serious threats to inmate and staff safety, or following inmate violence. Hernandez Decl. ¶ 6. A modified program generally involves the suspension of various programs or services for a specific group of inmates and/or in a specific part of the facility. Hernandez Decl. ¶ 6.

On April 15, 2013, Plaintiff submitted an unsigned memorandum to Spiritual Leader Herrera that was addressed to "all concerned staff." Hernandez Decl. ¶ 19 and Ex. C. The memorandum requested accommodations for Ramadan 2013,[2] including preferred meeting times, preferred prayer periods, preferred menus, and a preferred vendor to provide the halal meals. Hernandez Decl., Ex. C. The memorandum also requested that specific Facility B Muslim inmates handle preparation and distribution of Ramadan food for Facility B Muslim inmates. Hernandez Decl., Ex. C. This memorandum was forwarded to CRM Hernandez, who passed it on to SVSP's Religious Review Committee ("RRC"). Hernandez Decl. ¶ 19. The RRC is the SVSP body to which inmates must submit their religious accommodations requests. Hernandez Decl. ¶ 18. The RRC is composed of designated institutional chaplains, a correctional captain or his designee, two correctional complex administrators, and the CRM. Hernandez Decl. ¶ 18.

On May 22, 2013, CRM Hernandez attended a meeting with several members of the RRC, Plaintiff, and Chaplin Aquil. Hernandez Decl. ¶ 20. At this meeting, Plaintiff was informed that, due to security needs and lack of available resources, SVSP could not accommodate the request made in his April 2013 memorandum for five hours of nightly congregational prayer during Ramadan 2013. Hernandez Decl. ¶ 20. Chaplain Aquil also stated that Islam does not require congregational breaking of the fast during Ramadan, or congregational sundown prayers during Ramadan. Hernandez Decl. ¶ 20.

On May 29, 2013, the California Department of Corrections and Rehabilitations ("CDCR") issued a memorandum to all community resources managers and food services managers regarding food services during Ramadan 2013. Hernandez Decl. ¶ 21 and Ex. D. The May 2013 CDCR memorandum authorized CDCR institutions to serve Ramadan participants their food on paper trays at the regular feeding time for the general inmate population even if that time was before sundown. Hernandez Decl. ¶ 21 and Ex. D.

On June 7, 2013, then-warden R.T.C. Grounds approved the "Salinas Valley State Prison Ramadan Protocol," which was prepared by members of the RRC, in consultation with SVSP

---

[2] In 2013, Ramadan began July 8 and ended on August 8. Hernandez Decl. ¶ 21.

1  Custody and Food Service staff.  Hernandez Decl. ¶ 22 and Ex. E.  The SVSP 2013 Ramadan
2  Protocol set forth the dates of Ramadan observance, the Ramadan 2013 menu, and meal delivery
3  times.  Hernandez Decl. ¶ 22 and Ex. E.  The 2013 Ramadan Protocol provided that Ramadan
4  meals would be prepared according to approved halal practices, as requested in Plaintiff's April
5  2013 memorandum.  Hernandez Decl. ¶ 22 and Ex. E.  The 2013 Ramadan Protocol did not
6  provide the menu items and preferred prayer periods requested by Plaintiff in his April 2013
7  memorandum.  Hernandez Decl., Ex. E.

8  On June 18, 2013, M. Lawal accepted the SVSP Muslim chaplain position, but delayed his
9  start date until after Ramadan.  Hernandez Decl. ¶ 23.

10  On July 2, 2013, shortly before Ramadan began, Facility B inmates rioted.  Hernandez
11  Decl. ¶ 24.  Facility B was placed on a modified program resulting in the cancellation of all group
12  worship, including congregational Ramadan services for black inmates.  Hernandez Decl. ¶ 24.
13  The modified program was later limited to members of the Bloods and Crips Security Threat
14  Groups.  Hernandez Decl. ¶ 24.  Plaintiff has been identified as a Crip and therefore remained on
15  the modified program until July 25, 2013.  Hernandez Decl. ¶ 24.  Although Facility B returned to
16  normal programming between July 26 and August 6, 2013, Facility B did not allow inmates to
17  participate in congregational Ramadan services because there still was no chaplain or volunteer to
18  supervise chapel worship.  Hernandez Decl. ¶ 25.  From August 7 to August 27, 2013, Facility B
19  was again put on a modified program due to inmate rioting, and all congregational worship was
20  cancelled during this time.  Hernandez Decl. ¶ 26.  Due to the repeated modified programs and the
21  unavailability of a chaplain or certified volunteer to supervise chapel worship during Ramadan,
22  Facility B Muslim inmates were unable to congregate for the Rituals of Iftar (daily breaking of
23  Ramadan fast) or the feast of Eid al-Fitr (the ceremonial end to Ramadan).  Hernandez Decl. ¶ 27.
24  Instead, inmates ate their Ramadan meals in their cells.  Hernandez Decl. ¶ 27.

25  On December 12, 2013, Plaintiff sent the RRC a request to add "Midamar" and "Halalco
26  Books and Meats" as religious package vendors.  Hernandez Decl. ¶ 28.  On April 1, 2014,
27  Plaintiff submitted a proposal to the RRC to establish a Muslim-oriented group, called "Milatti
28  Islami Anonymous," that would provide a twelve-step recovery program for "any type of criminal

4

activities, gang involvement, and any other destructive substance abuse addictions," and that would also raise funds for Muslim-inmate religious activities. Hernandez Decl. ¶ 29 and Ex. H.

On April 23, 2014, Plaintiff filed the instant action. Docket No. 1.

On August 11, 2014, SVSP administrators requested that Plaintiff resubmit his proposal for "Milatti Islami Anonymous" with a proposed course curriculum and informed Plaintiff that fundraising for inmate programs was prohibited. Hernandez Decl. ¶ 30. On October 1, 2014, Plaintiff submitted a revised request to establish "Milatti Islami Anonymous" but did not include a proposed curriculum. Hernandez Decl. ¶ 31. No action was taken on Plaintiff's revised request before Plaintiff's amended complaint was filed on October 9, 2014. Hernandez Decl. ¶ 31.

B.   **Plaintiff's Grievances**

**Grievance No. SVSP-10-03454.** On November 18, 2010, Plaintiff submitted a grievance alleging that Muslim inmates had been "systemically denied the right to assemble and worship on Fridays . . ." Docket No. 45-6 at 5. The grievance requested, <u>inter alia</u>, that a policy be implemented allowing Muslim inmates to congregate on Fridays at noon for Jumu'ah prayers, including during lockdown periods and modified programs. Docket No. 45-6 at 5 and 7. The grievance was denied at the first level by Sergeant E. Parsons and Facility B Captain S. Hatton on the grounds that the staff redirection plan[3] only allowed for Jumu'ah prayers to be held on Wednesdays and Thursdays.[4] Docket No. 45-6 at 20–21. At the second level of review, the grievance was assigned to Counselor Medina. Docket No. 45-6 at 9. The grievance was partially granted at the second level by then SVSP Chief Deputy Warden Solis on the same grounds. Chief Deputy Warden Solis stated that the lack of Friday Muslim services was not intended to discriminate against particular inmates, but was necessary to ensure prison safety. Docket No. 45-6 at 10–12. On May 3, 2011, the grievance was denied at the third level by Appeals Examiner K.

---

[3] In response to budgetary concerns, the CDCR reduced staff by three percent. Docket No. 46-5 at 10. In order to ensure prison safety and security, CDCR also implemented a staff redirection plan which redirected staff a certain amount of hours to obtain a three percent salary reduction. <u>Id.</u> The staff redirection plan impacted inmate programs generally, but specifically impacted the availability of Facility B program services on Fridays. <u>Id.</u>

[4] At the time of the grievance, mandatory staff training conducted on the third Fridays of each month conflicted with Muslim services. Docket No. 46-5 at 10.

Kostecky and Inmate Appeals Branch Chief D. Foston on the grounds that institutional safety required holding Jumu'ah services on Wednesdays and Thursdays. Docket No. 46-65 at 2–4.

**Grievance No. SVSP-13-01818**. On April 8, 2013, Plaintiff submitted a grievance alleging that the CDCR was defrauding the federal government by accepting $230 million in federal funding but failing to run appropriate religious programming. Docket No. 45-7 at 6–8. Plaintiff specifically alleged that the CDCR, SVSP "Warden(s), Captain(s), Lieutenant(s), Sergeant(s) and staff" were preventing Muslim inmates from practicing their religion by (1) preventing Muslim inmates from assembling for mandatory Friday Jumu'ah prayers; (2) failing to hire a full-time Muslim chaplain who followed the tenets of Islam; (3) failing to purchase holy qurans, prayer rugs, religious books, hadiths about Islam, and prayer oil, and preventing inmates from seeking donations of such items from Muslim groups; (4) preventing Muslim inmates from making the required five daily congregational prayers; (5) preventing Muslim inmates from observing the breaking of the fast during Ramadan with congregational prayer and eating together (Eid); and (6) prohibiting Muslim inmates from ordering halal items in their religious packages. Docket No. 45-7 at 8. Plaintiff requested the following actions: (1) that the prison hire a Muslim chaplain who could read and recite the Quran in Arabic and who knew a minimum of twenty chapters of the Quran; (2) that the prison allow Muslim inmates to report to the chapel for a minimum of 15 minutes for the five-daily congregational prayers; (3) that the prison hold Friday Jumu'ah prayers regardless of whether a chaplain is present; (4) that the prison assign custody staff to supervise every religious service; (5) that the prison allow Muslim inmates to go to the chapel at 12 noon or from 12:30 p.m. to 3:00 p.m.; (6) that the prison pay each Muslim inmate $100 for each congregational prayer that had been denied in the past ten years; (7) that the prison house all Muslim inmates in the same building; (8) that the prison allow Muslim inmates quarterly religious packages; and (9) that the prison order holy qurans, Islamic books, and prayer rugs. Docket No. 45-7 at 8.

On May 24, 2013, at the first level of review, CRM Hernandez and Native American Spiritual Leader Herrera partially granted the grievance on the grounds that SVSP was in the process of hiring a Muslim chaplain and that Muslim inmates were already allowed to make

6

quarterly purchases of halal foods from authorized vendors. Docket No. 45-11 at 3–4. The grievance was denied as to all other issues. Docket No. 45-11 at 3–4. Plaintiff appealed the denial, and the second-level review was assigned to Counselor Medina. Docket No. 45-15 at 8. On June 17, 2013, Warden Muniz partially granted the grievance at the second level of review on the grounds that a Muslim chaplain had recently been hired and that when there was no full-time Muslim chaplain at SVSP, alternative chaplains had supervised Jumu'ah prayers whenever possible. Docket No. 45-9 at 4–10. Warden Muniz denied the grievance as to all other issues. Docket No. 45-9 at 4–10. The second-level review stated that Plaintiff had raised new issues in his response to the first-level decision, but did not specify what these issues were. Docket No. 45-9 at 9. Plaintiff's appeal to the third level of review was denied in its entirety on September 26, 2013. Docket No. 45-7 at 2–5. The third-level review stated that Plaintiff had raised new issues in his response to the second-level decision, but did not specify what these issues were. Docket No. 46-7 at 4.

**Grievance No. SVSP-13-03281**. On June 30, 2013, Plaintiff submitted a grievance alleging that the 2013 Ramadan Protocol would deny Muslim inmates their right to observe Ramadan. Specifically, Plaintiff grieved that the 2013 Ramadan Protocol would require Muslim inmates to eat cold, non-certified halal meals that were prepared and served by non-Muslims; require Muslim inmates to eat from paper trays; and prevent Muslim inmates from breaking their fast together and making the mandatory congregational prayer. Docket No. 46-9 at 5–7. Plaintiff requested the following relief: (1) an audit to find out why Muslim inmates are forced to eat altered and/or genetically altered or created soy products during Ramadan; (2) an audit of the ecclesiastical funds to determine why certified halal meals were not being provided for Ramadan; (3) a written explanation as to why the CDCR and/or CRM Hernandez were prohibiting Muslim inmates from preparing and serving food for Ramadan; (4) a written explanation as to why Muslim inmates were being prohibited from meeting in the chapel for five hours each evening of Ramadan to eat and pray tarawih (Ramadan congregational prayer) together; and (5) that SVSP adopt the proposals set forth in Plaintiff's April 15, 2013 memorandum. Docket No. 46-9 at 5–7.

During Plaintiff's first-level interview with CRM Hernandez, Plaintiff clarified that in

7

addition to soy products, he believed that the turkey and chicken being served for Ramadan were not halal. Docket No. 46-16 at 6–8. On July 29, 2013, in the first-level response, CRM Hernandez partially granted the grievance by removing an allegedly non-halal "BBQ soyspread" from the Ramadan menu. Docket Nos. 46-12 at 3 and 46-16 at 6. CRM Hernandez denied the remaining claims, stating that due to reduced staff, limited overtime, and security concerns, Muslim inmates could not be served hot meals after sundown during Ramadan; that, according to Muslim Chaplain Aquil, it was not forbidden for non-Muslim staff to serve Ramadan meals; that, according to Food Manager R. Conway, inmates need to be certified food handlers/servers to cook and serve food; that, according to Chaplain Aquil, it was not mandatory that Muslim inmates congregate for the daily evening Ramadan prayer; and that, due to security needs and available resources, Plaintiff's request that Muslim inmates congregate for the daily evening Ramadan prayer could not be accommodated. Docket No. 46-12 at 3–4. CRM Hernandez also reported that the food served during 2013 Ramadan is certified halal, and that ecclesiastical funds are not used for food purchases. Docket No. 46-12 at 4.

The grievance was accepted at the second level of review and assigned to Counselor Medina on September 3, 2013. Docket No. 46-16 at 2. On September 12, 2013, in the second-level review, Warden Muniz partially granted the grievance on the same grounds as the first-level decision, and denied the rest of the grievance. Docket No. 46-15 at 7–11. On December 10, 2013, the third-level review denied the grievance in its entirety. Docket No. 46-19 at 6–8.

C. **Federal Civil Rights Action**

On April 23, 2014, Plaintiff commenced the instant action, naming Warden Muniz, Correctional Counselor Medina, and CRM Hernandez as defendants. Docket No. 1. On January 26, 2015, the Court found that the following allegations in Plaintiff's amended complaint — Defendants denied Plaintiff Friday Jumu'ah prayers and five daily congregational prayers; prevented him from observing the Rituals of Iftar[5] which require breaking the daily fast with other Muslims and praying the Magrib and Tarawih prayers with other Muslims; denied him a qualified

---

[5] Iftar is the evening meal when Muslims end their daily Ramadan fast at sunset.

8

Muslim chaplain and necessary religious artifacts; prohibited him from making purchases from Muslim vendors; and prevented him from starting a Muslim resource group — stated cognizable claims for violations of Plaintiff's First Amendment right to the free exercise of religion, Fourteenth Amendment equal protection rights, and rights under RLUIPA. Docket No. 15 at 3; see also Docket No. 13 ("FAC"). The Court also found that the following allegations in Plaintiff's amended complaint — Defendants failed to provide Plaintiff with hot Ramadan meals prepared and served by Muslims and denied him the ceremonial halal foods normally eaten at the religious ceremonies of Eid al-Adha and Eid al-Fitr — stated cognizable claims for violations of Plaintiff's First Amendment right to the free exercise of religion and rights under RLUIPA. Docket No. 15 at 3; see also FAC.

## DISCUSSION

### A.      Legal Standard

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a) (2014). Material facts are those that may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See id.

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." See Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Id. The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" See id. at 324 (citing Fed. R. Civ. P. 56(e)).

1    For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. See T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

**B.     Exhaustion**

In their summary judgment motion, Defendants argued that Plaintiff had failed to exhaust any of his claims, because he either failed to file a grievance regarding the claim, or his grievance was procedurally improper. Docket No. 42 at 14–15. Plaintiff argues that he satisfied the exhaustion requirement because Defendants addressed the merits of his grievances. Docket No. 63 at 6–7.[6]

**1.     Standard**

"No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. Porter v. Nussle, 534 U.S. 516, 524 (2002). All available remedies must be exhausted; those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" Id. Section 1997e(a) requires "proper exhaustion" of available administrative remedies. Woodford v. Ngo, 548 U.S. 81, 93 (2006). Proper exhaustion requires using all steps of an administrative process and complying with "deadlines and other critical procedural rules." Id. at 90. The level of detail in an administrative grievance necessary to

---

[6] Plaintiff also argues that he "has standing before this court to seek redress from the alleged violations which are ripe for a decision from this court," Docket No. 63 at 5, and that his grievances fulfilled the notice pleading standard, id. at 7. Plaintiff misunderstands the exhaustion requirement. The exhaustion requirement is distinct from standing, ripeness, or notice pleading. Defendants are not challenging Plaintiff's standing to bring his claims, the ripeness of his claims, or whether he has sufficiently pled his claims. Rather, Defendants allege that he has not satisfied the exhaustion requirement set forth in 42 U.S.C. § 1997e(a). Docket No. 42 at 14–17.

1  properly exhaust a claim is determined by the prison's applicable grievance procedures. Jones v.
2  Bock, 549 U.S. 199, 218 (2007); see also Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010)
3  ("To provide adequate notice, the prisoner need only provide the level of detail required by the
4  prison's regulations.").

5  The California Department of Corrections and Rehabilitation ("CDCR") provides its
6  inmates and parolees the right to appeal administratively "any policy, decision, action, condition,
7  or omission by the department or its staff that the inmate or parolee can demonstrate as having a
8  material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, §
9  3084.1(a). In order to exhaust available administrative remedies within this system, a prisoner
10 must submit his complaint on CDCR Form 602 and proceed through several levels of appeal: (1)
11 first formal-level appeal filed with one of the institution's appeal coordinators, (2) second formal-
12 level appeal filed with the institution head or designee, and (3) third formal-level appeal filed with
13 the CDCR director or designee. Cal. Code Regs. tit. 15, § 3084.7. This satisfies the
14 administrative remedies exhaustion requirement under § 1997e(a). Id. §§ 3084.1(b); 3084.7(c)(3);
15 Barry v. Ratelle, 985 F. Supp. 1235, 1237–38 (S.D. Cal. 1997). If an inmate's grievance does not
16 comply with a procedural rule but prison officials decide it on the merits anyway at all available
17 levels of administrative review, it is exhausted. Reyes v. Smith, 810 F.3d 654, 656, 658 (9th Cir.
18 2016) (agreeing with all "sister" circuits).

**2. Analysis**
   **a. Claims regarding congregational prayers, qualified Muslim chaplain, necessary congregational artifacts, and observing Iftar**

Plaintiff failed to adequately identify Defendants in grievance number SVSP-13-01818, as required by the California Code of Regulations, Title 15, section 3084.2(a)(3)-(4). However, in their reply, Defendants acknowledge that, pursuant to the Ninth Circuit's recent decision in Reyes v. Smith, 810 F.3d 654 (9th Cir. 2016), this procedural defect was waived by Defendants when Defendants addressed SVSP-13-01818 on the merits. Defendants concede that the claims raised in SVSP-13-01818 have been exhausted. Docket No. 69 at 4–5.

Defendants argue that grievance number SVSP-13-01818 only raised and exhausted the following claims: Plaintiff was denied congregational Friday Jumu'ah prayer and the five-time

11

daily prayers; denied a qualified Muslim chaplain; and denied necessary congregational artifacts. Docket No. 42 at 15 and Docket No. 69 at 4. The Court finds that grievance number SVSP-13-01818 also grieved — and exhausted — the claim that Defendants prevented Plaintiff from observing the rituals of Iftar which require Plaintiff to break his fast with other Muslims and praying the Magrib and Tarawih prayers with other Muslims.[7] See Docket No. 46-7 at 2 ("Thus preventing Muslims to Observe the breaking of the Fast together during the Month of Ramadan, make Congregation Salat (i.e. Prayer) once the Fast is broken, and eating together as previously done at the Salinas Valley State Prison for years as well as other prisons."). Accordingly, Defendants' summary judgment motion is DENIED to the extent that it requests dismissal for failure to exhaust administrative remedies for Plaintiff's claims that Defendants denied him congregational Friday Jumu'ah prayer and the five-time daily prayers; a qualified Muslim chaplain; necessary congregational artifacts; and the ability to observe Iftar.

### b. Claims regarding Muslim vendors, Muslim resource group, and ceremonial halal foods for Eid al-Adha and Eid al-Fitr

The Court agrees that Plaintiff has failed to exhaust his claims that Defendants prohibited him from purchasing from Muslim vendors; prohibited him from starting a Muslim resource group; and denied him the ceremonial halal foods normally eaten at the religious ceremonies of Eid al-Adha and Eid al-Fitr. Plaintiff makes the general statement that "[e]ach and every claim which is before this court was presented to defendants within [his] appeal, they were investigated and addressed on there (sic) merits." Docket No. 63 at 7. However, Plaintiff does not identify which grievance exhausted these particular claims, and none of Plaintiff's grievances that are in the record (e.g. grievance numbers SVSP-13-01818, SVSP-10-03454, and SVSP-13-03281)[8] raise these claims. Accordingly, the Court GRANTS in part Defendants' summary judgment motion and dismisses without prejudice, for failure to exhaust administrative remedies, Plaintiff's claims

---

[7] Grievance number SVSP-13-01818 also grieved the prohibition on ordering halal items in religious packages, but Plaintiff has not raised this as a claim in this action.
[8] Both parties agree that grievance number SVSP-10-03078, which has also been filed in the record, grieved whether Plaintiff was allowed to wear a kufi cap which is not at issue in this action. Docket Nos. 42 at 5 and 63 at 4.

1  that Defendants prohibited him from making purchases from Muslim vendors; that Defendants

2  prohibited him from starting a Muslim resource group; and that Defendants denied him the

3  ceremonial halal foods normally eaten at the religious ceremonies of Eid al-Adha and Eid al-Fitr.

### c. Claim regarding hot Ramadan meals prepared and served by Muslims

The Court now turns to Plaintiff's remaining claim that Defendants failed to provide him with hot Ramadan meals prepared and served by Muslims. Defendants acknowledge that this claim was grieved in grievance number SVSP-13-03281:

> The Community Resource Manager, "C. Hernandez" is not allowing thge (sic) Muslims to choose Muslim inmate to cook and pass out our food for Ramadan, which is "FORBIDDEN" (sic) in our Religion (sic). . . . The June 7, 2013 Memo Guarantees (sic) that your EVENING RAMADAN MEALS WILL BE SERVED ON PAPER PLATES, AND COLD (sic), as it has been systematically done for the last three years under this lockdown memorandum. . . .

Docket No. 45-12 at 7. Defendants also acknowledge that grievance number SVSP-13-03281 grieved the Defendants' refusal to allow Plaintiff five hours of congregational prayer during each day of Ramadan and refusal to allow Plaintiff to break his fast with other inmates at sundown during each day of Ramadan. Docket No. 69 at 5.

Defendants argue that grievance number SVSP-13-03281 did not exhaust Plaintiff's claim regarding Ramadan meals because it did not comply with the prison's procedural rule that prohibited inmates from grieving prison officials' anticipated actions, see Cal. Code Regs. tit. 15, § 3084.6(b)(1) (2013), because it grieved the 2013 Ramadan Protocol, which had not yet taken effect at the time the grievance was filed.[9]

---

[9] Defendants also argue that grievance number SVSP-13-03281 did not exhaust Plaintiff's claims regarding Ramadan because the 2013 Ramadan Protocol was not implemented. Docket No. 69 at 5. Whether or not the 2013 Ramadan Protocol was implemented, Plaintiff still suffered the alleged constitutional violation of being denied hot Ramadan meals prepared and served by Muslims. A grievance exhausts administrative remedies when, liberally construed, it has the same subject and same request for relief as the federal claim. See, e.g., Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) (quoting Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002)) ("'grievance suffices [to exhaust a claim] if it alerts the prison to the nature of the wrong for which redress is sought.'"); cf. O'Guinn v. Lovelock Correctional Center, 502 F.3d 1056, 1062–63 (9th Cir. 2007) (even with liberal construction, grievance requesting a lower bunk due to poor balance resulting from a previous brain injury was not equivalent to, and therefore did not exhaust administrative remedies for, claims of denial of mental health treatment in violation of the ADA and Rehabilitation Act). Grievance number SVSP-13-03281 has the same subject and same request for relief as the federal claim, thereby exhausting Plaintiff's claim regarding Ramadan meals. To argue that grievance number SVSP-13-03281 failed to exhaust Plaintiff's claim

The Court disagrees and finds that SVSP-13-03281 addressed all the issues grieved, including Plaintiff's claim regarding Ramadan meals, on the merits at all available levels of administrative review, thereby exhausting Plaintiff's claim regarding Ramadan meals. Reyes, 810 F.3d at 656, 658 (procedurally defective grievance is exhausted if decided on the merits by prison officials at all available levels of administrative review). At the first-level review, CRM Hernandez partially granted the grievance by removing an allegedly non-halal "BBQ soyspread" from the Ramadan menu, but denied the remainder of Plaintiff's grievance. In relevant part, CRM Hernandez denied Plaintiff's request for hot Ramadan meals prepared and served by Muslim inmates stating that reduced staff, limited overtime, and security concerns prohibited the prison from providing Muslim inmates with hot meals after sundown; and inmates could not serve food unless they were certified food handlers/servers. Docket No. 46-12 at 3. In the second-level review – which took place after Ramadan had passed and therefore no longer grieved anticipated actions – Warden Muniz partially granted the grievance on the same grounds as the first-level decision, and denied the rest of the grievance on the same grounds. Docket No. 46-15 at 7–11. The third-level review denied the grievance in its entirety on the same grounds as set forth in the first-level review. Docket No. 46-19 at 6–8. The Court therefore DENIES Defendants' summary judgment motion to the extent that it seeks dismissal of Plaintiff's claim that Defendants failed to provide him with hot Ramadan meals prepared and served by Muslims.

C.   **Eleventh Amendment**

Defendants argue, and Plaintiff concedes, that Defendants are entitled to Eleventh Amendment immunity with respect to Plaintiff's official-capacity claims for monetary relief. Docket No. 42 at 17–18 and Docket No. 63 at 8. Defendants are employees of a state agency, the CDCR. Official capacity suits against Defendants are therefore suits against the state, see Kentucky v. Graham, 473 U.S. 159, 169–70 (1985) (suit against a state official in his official capacity is not a suit against the official but rather a suit against the official's office, i.e., the state)

---

because the injury complained of was caused by other prison protocols and not by the 2013 Ramadan Protocol is an overly technical application of the exhaustion requirement and an overly narrow construction of grievance number SVSP-13-03281.

and barred by the Eleventh Amendment, Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 237–38 (1985) (Eleventh Amendment bars from the federal courts suits against a state by its own citizens). Moreover, the Eleventh Amendment also prohibits litigants from bringing suits for money damages against state officials acting in their official capacity. Eaglesmith v. Ward, 73 F.3d 857, 860–61 (9th Cir. 1995); see also Kentucky, 473 U.S. at 169–70 (citing Dugan v. Rank, 372 U.S. 609, 620 (1963)) (suit will be barred under the Eleventh Amendment if the judgment sought would expend itself on the public treasury or domain); see also Confederated Tribes & Bands v. Locke, 176 F.3d 467, 469 (9th Cir. 1999) (damages claim against governor in his official capacity barred by Eleventh Amendment). The Ninth Circuit has specifically applied this bar to an inmate's suit for official-capacity damages under RLUIPA. See Holley v. Cal. Dep't. of Corr., 599 F.3d 1108, 1114 (9th Cir. 2010) (Eleventh Amendment bars inmate's suit for official-capacity damages under RLUIPA). Accordingly, the Court GRANTS summary judgment in favor of Defendants with respect to Plaintiff's official-capacity claims for monetary relief.

### D.     RLUIPA

Defendants correctly argue that they are entitled to summary judgment with respect to Plaintiff's individual-capacity RLUIPA claims. RLUIPA does not authorize suits against state actors (including prison officials) acting in their individual capacity. Wood v. Yordy, 753 F.3d 899, 904 (9th Cir. 2014) (agreeing with other circuits addressing this issue). In response, Plaintiff argues that he is suing Defendants in their individual capacities for violating his First Amendment right to free exercise of religion; that Defendants did not plead qualified immunity; and that Plaintiff's rights were clearly established. Docket No. 63 at 8. These issues are unrelated to whether RLUIPA contemplates individual liability. Accordingly, the Court GRANTS summary judgment in favor of Defendants with respect to Plaintiff's individual-capacity RLUIPA claims.

### E.     Defendants Counselor Medina and Warden Muniz

Defendants argue that Plaintiff has failed to state a claim against Counselor Medina and Warden Muniz because a prison official's denial of an inmate appeal cannot serve as the sole basis for liability under § 1983. Defendants argue, and Plaintiff concedes, that Plaintiff's claims against Counselor Medina and Warden Muniz are based on their denials of his inmate appeals. Docket

No. 42 at 18–19 and Docket No. 63 at 9. Plaintiff argues that Counselor Medina and Warden Muniz are liable because their failure to act resulted in the constitutional violations.

The cases cited by Defendants — <u>Ramirez v. Galaza</u>, 334 F.3d 850 (9th Cir. 2003), and <u>Mann v. Adams</u>, 855 F.2d 639 (9th Cir. 1988) — establish that inmates lack a constitutional entitlement to a specific prison grievance procedure. <u>Ramirez</u>, 334 F.3d at 860; <u>Mann</u>, 855 F.2d at 640. In applying this principle, courts have held that there is no due process liability for failing to process or decide an inmate appeal properly. See <u>Ramirez</u>, 334 F.3d at 860. However, where a grievance puts a prison official on notice of an ongoing violation, the prison official's knowing failure to respond to an inmate's request for help may establish § 1983 liability. Cf. <u>Jett v. Penner</u>, 439 F.3d 1091, 1098 (9th Cir. 2006) (supervisor may be liable for deliberate indifference to a serious medical need, for instance, if he or she fails to respond to a prisoner's request for help). If a defendant only denied an inmate appeal about a religious problem that already had occurred and was complete (e.g., an exclusion of the inmate from a religious ceremony on a past date), there would be no liability for a constitutional violation; however, where the problem is an ongoing religious need and the request is made in an inmate appeal to remedy the ongoing problem, liability can be based on the denial of an inmate appeal, just as it could be based on the denial of a verbal request from the inmate.

Grievance number SVSP-13-01818, filed June 30, 2013 grieved, in relevant part, the denial of congregational Jumu'ah prayer and the five-time daily prayers; the denial of a qualified Muslim chaplain; the denial of necessary congregational artifacts; and the denial of the ability to observe Iftar. Docket No. 45-7 at 8. Grievance number SVSP-13-01818 was assigned to Counselor Medina at the second level of review on June 7, 2013, Docket No. 45-7 at 7, and denied by Warden Muniz at the second level of review on July 15, 2013, Docket No. 45-9 at 4–10. This grievance put both Warden Muniz and Counselor Medina on notice of the aforementioned potential ongoing constitutional violations. Liability for these alleged constitutional violations can therefore be based on Counselor Medina's investigation of these grievances and Warden Muniz's denial of these grievances. Cf. <u>Jett</u>, 439 F.3d at 1098.

Grievance number SVSP-13-03281 grieved, in relevant part, Defendants' failure to provide

16

1  hot Ramadan meals prepared and served by Muslim inmates. Docket No. 45-12 at 5–7.
2  Grievance number SVSP-13-03281 was assigned to Counselor Medina at the second level of
3  review on September 3, 2013, Docket No. 45-16 at 2, after Ramadan had ended. This grievance
4  was denied by Warden Muniz at the second level of review on September 12, 2013, Docket No.
5  45-15 at 7–11, also after Ramadan had ended. In this instance, Counselor Medina and Warden
6  Muniz denied an inmate appeal about a religious problem that already had occurred and was
7  complete, and are therefore not liable for the alleged constitutional violation. See Taylor v. List,
8  880 F.2d 1040, 1045 (9th Cir. 1989) (supervisory official liable under §1983 if he or she knew of a
9  violation and failed to act to prevent it).

Accordingly, Defendants' summary judgment motion is DENIED with respect to the liability of Warden Muniz and Counselor Medina for claims arising out of the denial of Friday Jumu'ah prayers, five-time daily prayers, a qualified Muslim chaplain, necessary congregational artifacts, and the ability to observe Iftar, but GRANTED with respect to the liability of Warden Muniz and Counselor Medina for claims arising out of the failure to provide hot Ramadan meals prepared and served by Muslim inmates.

## CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. Defendants' summary judgment motion is GRANTED IN PART and DENIED IN PART.

2. The Court dismisses with prejudice Plaintiff's individual-capacity RLUIPA claims; Plaintiff's official-capacity claims for monetary damages; and any claims against Warden Muniz and Counselor Medina arising out of the failure to provide hot meals Ramadan prepared and served by Muslim inmates.

3. The Court dismisses without prejudice, for failure to exhaust administrative remedies, Plaintiff's claims that Defendants prohibited him from making purchases from Muslim vendors; prohibited him from starting a Muslim resource group; and denied him the ceremonial halal foods normally eaten at the religious ceremonies of Eid al-Adha and Eid al-Fitr. Plaintiff may refile such claims after he has complied in full with the exhaustion requirements.

17

4. The case will proceed on the following claims.

   a. Plaintiff's allegations that Defendants, in their official and individual capacities, denied him Friday Jumu'ah prayers, five-time daily prayers, a qualified Muslim chaplain, necessary congregational artifacts, and the ability to celebrate Iftar in violation of Plaintiff's First Amendment right to free exercise of religion and of Plaintiff's Fourteenth Amendment equal protection rights. These same allegations state cognizable claims against Defendants in their official capacities for violation of Plaintiff's rights under RLUIPA.

   b. Plaintiff's allegation that defendant Hernandez, in her individual and official capacities, failed to provide him with hot Ramadan meals prepared and served by Muslim inmates, in violation of Plaintiff's First Amendment right to free exercise of religion. This same allegation also states a claim against defendant Hernandez in her official capacity for violation of Plaintiff's rights under RLUIPA.

5. In order to expedite the resolution of this case, the Court orders as follows:

   a. No later than **91 days** from the date this order is filed, Defendants must file and serve a motion for summary judgment or other dispositive motion. A motion for summary judgment also must be accompanied by a Rand notice so that Plaintiff will have fair, timely and adequate notice of what is required of him in order to oppose the motion. Woods v. Carey, 684 F.3d 934, 939 (9th Cir. 2012) (notice requirement set out in Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998), must be served concurrently with motion for summary judgment).

   If Defendants are of the opinion that this case cannot be resolved by summary judgment, Defendants must so inform the Court prior to the date the motion is due.

   b. Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the Court and served upon Defendants no later than **28 days** from the date the motion is filed. Plaintiff must bear in mind the notice and warning regarding summary judgment provided later in this order as he prepares his opposition to any motion for summary judgment.

   c. Defendants **shall** file a reply brief no later than **14 days** after the date the opposition is filed. The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion.

1    6.    Plaintiff is advised that a motion for summary judgment under Rule 56 of the
2 Federal Rules of Civil Procedure will, if granted, end your case.  Rule 56 tells you what you must
3 do in order to oppose a motion for summary judgment.  Generally, summary judgment must be
4 granted when there is no genuine issue of material fact – that is, if there is no real dispute about
5 any fact that would affect the result of your case, the party who asked for summary judgment is
6 entitled to judgment as a matter of law, which will end your case.  When a party you are suing
7 makes a motion for summary judgment that is properly supported by declarations (or other sworn
8 testimony), you cannot simply rely on what your complaint says.  Instead, you must set out
9 specific facts in declarations, depositions, answers to interrogatories, or authenticated documents,
10 as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and
11 documents and show that there is a genuine issue of material fact for trial.  If you do not submit
12 your own evidence in opposition, summary judgment, if appropriate, may be entered against you.
13 If summary judgment is granted, your case will be dismissed and there will be no trial.  Rand v.
14 Rowland, 154 F.3d 952, 962–63 (9th Cir. 1998) (en banc) (App. A).

15    (The Rand notice above does not excuse Defendants' obligation to serve said notice again
16 concurrently with a motion for summary judgment.  Woods, 684 F.3d at 939).

17    7.    The stay on discovery is lifted.  Discovery may be taken in accordance with the
18 Federal Rules of Civil Procedure.

19    8.    All communications by Plaintiff with the Court must be served on Defendants'
20 counsel by mailing a true copy of the document to Defendants' counsel.  The Court may disregard
21 any document which a party files but fails to send a copy of to his opponent.

22    9.    Plaintiff is responsible for prosecuting this case.  Plaintiff must promptly keep the
23 Court informed of any change of address and must comply with the Court's orders in a timely
24 fashion.  Failure to do so may result in the dismissal of this action for failure to prosecute pursuant
25 to Federal Rule of Civil Procedure 41(b).  Plaintiff must file a notice of change of address in every
26 pending case every time he is moved to a new facility.

27    10.   Any motion for an extension of time must be filed no later than the deadline sought
28 to be extended and must be accompanied by a showing of good cause.

11. Plaintiff is cautioned that he must include the case name and case number for this case on any document he submits to the Court for consideration in this case.

IT IS SO ORDERED.

Dated: July 20, 2016



_____
JON S. TIGAR
United States District Judge